```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,                    :
                                             :
                Plaintiff,                   :
                                             :
        v.                                   :     DECISION & ORDER
                                             :     13-CR-557 (WFK)
JAMES PASS,                                  :
                                             :
                Defendant.                   :
------------------------------------------------------------X
```

**WILLIAM F. KUNTZ, II, United States District Judge:** On December 8, 2021, this Court held an evidentiary hearing to address whether Defendant James Pass ("Defendant"), while on supervised release, violated the terms of an order of protection. For the reasons set forth below, the Court finds Defendant has violated the order but concludes that further action is unnecessary at this time.

## BACKGROUND

### I.  Sentencing and Arrests for Domestic Violence

Defendant pled guilty to being a felon in possession of a firearm and was sentenced to 71 months of imprisonment and 3 years of supervised release. Judgment, ECF No. 59. After serving his sentence, Defendant commenced his term of supervision in 2019. May 26, 2021 Report on Offender Under Supervision ("May 2021 Report"), ECF No. 92. At some point, Defendant moved into an apartment on a separate floor of the same building as the victim, who is the mother of his child. *See* Government's Br. ("Gov. Br.") at 1-2, ECF No. 114.

On May 26, 2021, the United States Office of Probation ("Probation") notified the Court that Defendant was arrested for allegedly assaulting the victim. May 2021 Report at 2. Specifically, the victim provided sworn testimony to police officers that Defendant "choke[d]," "punch[ed]," and "smack[ed]" her. Government's Nov. 19, 2021 Ltr. ("Nov. 19 Ltr.") at 2, ECF No. 107. As a result, Defendant was arrested and charged with assault, criminal obstruction of breathing, and harassment. May 2021 Report at 2. That same day, the victim withdrew her

allegations, which she claimed were untrue. *Id*. Defendant was then released on his own recognizance, and all charges were eventually dropped. *Id*.; Oct. 4, 2021 Report on Offender Under Supervision ("Oct. 4 Report") at 2, ECF No. 95.

In October of 2021, Probation informed the Court that Defendant was arrested on September 9, 2021 and charged with Criminal Contempt. Oct. 4 Report at 2. The charges stemmed from a September 3, 2021 domestic incident report ("DIR") in which the victim made a sworn statement that Defendant "pulled [her] hair and started fighting [her] in the hallway" and threatened to "spit" and "punch" her in the face."[1] Nov. 19 Ltr. at 2. Defendant was then arraigned before the Richmond County Criminal Court. *Id*.

## II. Arraignment Before the Richmond County Court

Defendant was present and represented by counsel at his arraignment. *See* Arraignment Tr. 2:7, 5:14-16, ECF No. 107-4, Ex. 4. There, the County Court notified Defendant that it would issue a temporary order of protection prohibiting him from "any contact" with the victim. *Id*. 5:4-12. However, because he lived in the same building as the victim, counsel for Defendant asked permission for Defendant to continue residing in his apartment. *Id*. 3:14-24. The County Court denied this request and ordered Defendant to "find another place to live." *Id*. 4:3-4. When counsel renewed his application, the County Court again stated Defendant was "going to have to find another place to live" and that the order of protection would be a "full stay away order." *Id*. 5:4-8. Shortly after, Defendant asked to make a statement, which the County Court denied. *Id*. 5:14-22.

---

[1] The victim also alleged, and Defendant admitted to, having a "verbal argument" about the care of their infant daughter on a prior date. Oct. 4 Report at 2.

The County Court issued the written order of protection the following day. *See* Order of Prot., ECF No. 107-3, Ex. 3. The order directed Defendant to avoid, among other things, the "home," "school," "business" and "place of employment" of the victim. *Id*. The written order did not explicitly state that Defendant was required to move out of the victim's building. *See id*.

### III.     October 3 Incident and Arrest

The next month, Defendant was arrested following an October 3, 2021 DIR in which the victim made a sworn statement that Defendant "followed [her] to [her apartment] building," verbally harassed her, and threatened to "spit" and "slap [her] in the face." Nov. 19 Ltr. at 2. Defendant was charged with harassment and criminal contempt for violating a court order. Oct. 20 Report on Offender Under Supervision ("Oct. 20 Report") at 2, ECF No. 97. On October 13, 2021, he was arraigned in Richmond County Criminal Court and released on his own recognizance, and a second temporary order of protection was issued directing him to avoid the victim. *Id*.

Following his arrest, Defendant's supervising probation officer, Michael Imrek, interviewed both Defendant and the victim about the October 3 incident. *Id*. During his interview, Defendant claimed the victim began "yelling at and screaming at him for walking with another female" in front of her building. *Id*. Defendant admitted to living in her apartment as of October 3 but denied personally interacting with the victim on that date. *Id*. However, according to the victim, Defendant "follow[ed] her into the building" and "confronted her in the lobby." *Id*. She stated Defendant tried to "intimidat[e] her" and that he "wanted to see his daughter." *Id*. The victim subsequently withdrew her allegations after Defendant's arrest, claiming they were baseless. Nov. 19 Ltr. at 2-3.

3

On October 20, 2021, Probation informed this Court of Defendant's latest arrest. *See* Oct. 20 Report. In response, the Court scheduled a hearing to determine whether Defendant violated the order of protection by continuing to reside in the victim's building. *See* Oct. 21, 2021 Order, ECF No. 98. The Court also ordered the Government to produce the victim as a witness. Dec. 2, 2021 Order, ECF No. 110.

IV. **December 8 Hearing**

The hearing took place on December 8, 2021. *See* Dec. 8, 2021 Order, ECF No. 112. There, the Government argued Defendant committed criminal contempt in the second degree, in violation of New York Penal Law § 215.50(3), by continuing to live in the victim's apartment in violation of the order of protection. *See* Nov. 19 Ltr. at 1; Violation Tr. 30:1-4, ECF No. 114-1, Ex. 1. In support of this charge, the Government produced Defendant's supervising officer, Michael Imrek, as a witness. Officer Imrek testified that, during his interview of Defendant about the October 3 incident, Defendant admitted he was still living in the victim's building as of that date but has since moved to a different residence on or about December 1, 2021. Violation Tr. 13:7-16, 16:1-14. Officer Imrek also testified that Defendant did not dispute being present at the victim's building during the October 3 incident. *Id.* 16:12-15. Over the hearsay objection of counsel, Officer Imrek also read into the record a police report summarizing the victim's testimony that Defendant had followed her to her apartment against her will and threatened her. *Id.* 14:1-25, 15:1-23.

The victim was present at the start of the hearing but left soon after. *Id.* 29:14-21. The Court was thus not able to question her about her allegations of domestic violence against Defendant.

4

**DISCUSSION**

**I.   Legal Standard**

To establish criminal contempt in the second degree, the Government must demonstrate by a preponderance of the evidence, that "(1) a valid protective order existed, (2) the defendant knew about that order, and (3) the defendant intended to violate the order." *Williams v. Suffolk Cnty.*, 284 F. Supp. 3d 275, 285 (E.D.N.Y. 2018) (Spatt, J.) (citing *Carthew v. Cnty. of Suffolk*, 709 F. Supp. 2d 188, 198 (E.D.N.Y. 2010)). The order of protection must also be "unequivocal," and "[a]ny ambiguity" as to its terms "must be resolved in the defendant's favor." *People v. Roblee*, 70 A.D.3d 225, 227-28 (3d Dep't 2009) (citations omitted). Moreover, "[n]otice of the contents of, and therefore the conduct prohibited by" a protective order may be given "either orally or in writing or in combination to cover the whole set of circumstances" forbidden by the order. *People v. Clark*, 95 N.Y.2d 773, 775 (N.Y. 2000); *see also People v. Leonard*, 4 Misc. 3d 814, 818 (Queens Cnty. Crim. Ct. 2004) (finding that the defendant was aware of an order of protection because he was "present in Court" and "given notice of the contents of the order orally and in writing.").

A defendant's intent to violate the order of protection may be presumed by the circumstances, including his "presence at the building after he realized that [the protected party] was also there." *Carthew*, 709 F. Supp. 2d at 198.

**II.   Application**

    **A. The Government Met Its Burden of Proving Defendant's Violation of the Order of Protection**

The Government has established a prima facie case for criminal contempt in the second degree. To start, it is indisputable that an order of protection was in effect on October 3, 2021

5

that prohibited Defendant from contact with the victim. The parties have not contested, and the Court finds no reason to question, the existence and validity of the order.

The Government has also established Defendant knew the order required him to vacate the victim's building. Defendant was present and represented by counsel at his arraignment when the County Court ordered, in no uncertain terms, that he "find another place to live." Arraignment Tr. 4:3-4, 5:4-8. There is no ambiguity in this directive; the order plainly required Defendant to move out of the building. That the County Court issued this order *twice* and in response to defense counsel's request for Defendant to remain in the building also supports the Government's position that Defendant knew the order required him to move out. That is especially the case where, as here, Defendant actively participated in the hearing and even sought to make a statement.

Defendant maintains the order is "ambiguous" because it was issued "orally" to his counsel. Def. Br. at 3, ECF No. 113. Defendant's argument is foreclosed by the law, which makes clear that an order of protection may be "given either orally or in writing or in combination." *People v. Clark*, 95 N.Y.2d at 775. That the order was issued to Defendant's counsel is also immaterial. Courts presume that "any knowledge acquired by counsel is imputed to [a party] at the time that their counsel receives said information[.]" *L.I. Head Start Child Dev. Servs. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.*, No. CV-00-7394 (ADS), 2008 U.S. Dist. LEXIS 44694, at *33 (E.D.N.Y. 2008) (Spatt, J.); *see Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962) ("[E]ach party is . . . considered to have notice of all facts, notice of which can be charged upon [their] attorney."). Defendant has not alleged his counsel failed to inform him that the Court denied his request to remain in the building. Even if he had, the record demonstrates Defendant was likely aware the order required him to relocate.

6

The Government has also shown Defendant intentionally violated the order of protection. Despite knowing the order prohibited him from living in the victim's building, Defendant did so anyway. His disregard for the order thus led to an altercation with the victim at the building—the very circumstance the order was issued to prevent. Defendant's brazen actions demonstrates his intent to violate the order. *See Carthew*, 709 F. Supp. 2d at 198 (finding that defendant intentionally violated an order of protection based on his "presence at the building after he realized that [the protected party] was also there.").

### B. The Government Has Proved Defendant's Violation of the Order of Protection by a Preponderance of the Evidence

At the December 8 hearing, Officer Imrek testified that Defendant admitted he was living in the victim's building on October 3. Officer Imrek also testified that Defendant did not dispute he was present around the victim's apartment that same day and was involved in an altercation with her. The Court finds that Officer Imrek's testimony was credible and provides a sound basis to conclude Defendant was present at and living in the victim's building as of October 3 and, by doing so, violated the order of protection.

The police report concerning the October 3 incident corroborates Officer Imrek's testimony and further supports the Government's case. However, the police report contains both the out-of-court statements of the victim and the officer transcribing her testimony, and thus constitutes double hearsay. To be properly admitted, "each part of the [report must be] independently admissible." *United States v. Ulbricht*, 858 F.3d 71, 121 (2d Cir. 2017) (citation omitted). Put another way, "each level of hearsay [must] satisf[y] a hearsay exception" in the Federal Rules of Evidence. *United States v. Carneglia*, 256 F.R.D. 384, 392 (E.D.N.Y. 2009) (Weinstein, J.).

Both the report and the victim's testimony satisfy an exception to the hearsay rules. The police report is admissible as a business record under Rule 803(6) or as a public record under Rule 803(8). *See Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10, I.L.G.W.U.*, 605 F.2d 1228 (2d Cir. 1979) (admitting a police report as a business record); *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991) (admitting a police report as a public record). The victim's testimony is also admissible as an excited utterance under Rule 803(2) because it "relate[s] to a startling event"—here, the alleged altercation between her and Defendant—and was given less than an hour after the incident took place, when the victim was still "under the stress of excitement that [the altercation] caused." Fed. R. Evid. 803(2).

Because each part of the October 3 police report satisfies an exception to the hearsay rules, the report was properly admitted into the record. Considered together with Officer Imrek's testimony, the Court finds that the Government has proven by a preponderance of the evidence that Defendant violated the order of protection.

### C. Because Defendant Vacated the Building, Further Action Is Not Required at this Time

As confirmed by Probation, Defendant relocated to a different residence on or about December 1, 2021, just one week before the December 8 hearing. Therefore, Defendant is now in compliance with the order of protection. The Court concludes further action is no longer necessary to separate Defendant from the victim in light of this development.[2]

### CONCLUSION

For these reasons, the Court finds that although Defendant violated the order of

---

[2] Because the Court was unable to question the victim at the December 8, 2021 hearing, it reserves decision on the underlying allegations of domestic violence against Defendant.

8

protection, his subsequent relocation from the victim's residence has mooted the need for any further action.

SO ORDERED

s/ WFK

_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: February 15, 2022
      Brooklyn, New York